## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| STANLEY BARFIELD,<br><br>　　　*Plaintiff,*<br><br>　　v.<br><br>MICHAEL HOWARD, individually and in his official capacity as former Solicitor General of Washington County, Georgia; DAVID RALEY; JOEL COCHRAN, individually and in his official capacity as Sheriff of Washington County, Georgia; JOHNNY E.C. VINES; RICHARD HODGES; RYAN CHRISTOPHER HODGES; JASON PRINCE, and WASHINGTON COUNTY, GEORGIA,<br><br>　　　*Defendants.* | CIVIL ACTION NO.<br><br>_____<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Stanley Barfield, by and through undersigned counsel, files this Complaint against Michael Howard, individually and in his official capacity as former Solicitor General of Washington County, Georgia; David Raley; Joel Cochran, individually and in his official capacity as Sheriff of Washington County, Georgia; Johnny Vines; Richard Hodges; Ryan Christoper Hodges; Jason Prince, and Washington County, Georgia, a political subdivision of the State of Georgia. The Plaintiffs respectfully shows this Honorable Court and alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil rights action seeking monetary damages and injunctive relief for violations of Plaintiff's rights under the Constitution and laws of the United

States, pursuant to 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1961 et seq.), and the Georgia Racketeer Influenced and Corrupt Organizations Act (O.C.G.A. § 16-14-1 et seq.), as well as state law claims for fraud, conspiracy, official misconduct, and negligence.

2.      This action arises from a systematic pattern of corruption, racketeering, and civil rights violations in Washington County, Georgia, involving a scheme in which Defendants Michael Howard, Joel Cochran, and Johnny Vines operated a corrupt enterprise to provide favorable treatment to select criminal defendants in exchange for political, financial, and/or social benefit.

3.      As a direct and proximate result of this corrupt scheme, Ryan Hodges—who should have been prosecuted, convicted, and incarcerated for multiple DUI offenses—was instead improperly released and subsequently committed an aggravated battery upon Plaintiff Stanley Barfield on May 26, 2024, causing severe physical injuries and other damages.

4.      This corrupt scheme involved:

- Systematic referral of DUI arrestees by Defendant Joel Cochran to Defendant Johnny Vines,

- Payment of legal fees by defendants to Vines,

- Improper dismissal of charges by Solicitor General Michael Howard for Vines's clients,

- Creation of a two-tiered justice system based on attorney representation rather than facts and law,

- Violation of constitutional rights to due process and equal protection, and

- Endangerment of public safety through the release of dangerous offenders.

5.      Plaintiff seeks compensatory damages, punitive damages, treble damages under RICO, injunctive relief to halt these corrupt practices, attorney's fees, and all other relief to which he may be entitled.

## JURISDICTION AND VENUE

6.    This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

7.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as Plaintiff's federal claims.

8.    Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

10.    Plaintiff Stanley Barfield is a resident and citizen of Washington County, Georgia.

11.    At all times relevant to this Complaint, Plaintiff was and is a person entitled to the full protection of the United States Constitution and the laws of the United States and the State of Georgia.

12.    Plaintiff is the victim of an battery committed by Defendants Ryan Christopher Hodges, Jason Prince, and Richard Hodges on May 26, 2024, which was the direct and foreseeable result of the corrupt scheme operated by the other Defendants.

### Michael Shane Howard

13.    Defendant Michael Shane Howard is an individual who, at all times relevant to this Complaint, served as the part-time Solicitor General of Washington County, Georgia and as a privately-retained criminal defense attorney.

14.    As Solicitor General, Howard was responsible for prosecuting misdemeanor cases in the Washington County State Court, including DUI cases and other traffic offenses.

15.    Howard acted under color of state law at all times relevant to this Complaint.

16.    Howard is sued in both his individual capacity and his official capacity as former Solicitor General of Washington County.

17.     In his individual capacity, Howard is personally liable for his intentional violations of Plaintiff's constitutional rights and his participation in the corrupt scheme described herein.

18.     In his official capacity, Howard represented Washington County.

19.     At all times relevant, Howard took an oath to uphold the Constitution and laws of the United States and the State of Georgia, which oath he willfully and intentionally violated.

**David Raley**

20. Defendant David Raley served and continues to serve as a deputy in the Washington County Sheriff's Office.

21. Defendant David Raley arrested Defendant Ryan Hodges on May 9, 2021.

20.     At all times relevant, Defendant David Raley took an oath to uphold the Constitution and laws of the United States and the State of Georgia, which oath he willfully and intentionally violated when he participated in the scheme to conceal Hodges' commission of DUI on May 9, 2021.

21.     Defendant David Raley acted under color of state law at all times relevant to this Complaint.

22.     Defendant David Raley is sued in both his individual capacity and his official capacity as Sheriff of Washington County.

23.     In his individual capacity, Defendant David Raley is personally liable for his intentional violations of Plaintiff's constitutional rights and his participation in the corrupt scheme described herein.

**Joel Cochran**

24.     Defendant Joel Cochran is an individual who, at all times relevant to this Complaint, served and continues to serve as the Sheriff of Washington County, Georgia.

25.     As Sheriff, Cochran is responsible for law enforcement activities in Washington County, including arrest and detention of criminal suspects, operation of the county jail, and transportation of prisoners.

26.    Cochran is a final policymaker for Washington County with respect to law enforcement operations and practices of the Sheriff's Office.

27.    Cochran acted under color of state law at all times relevant to this Complaint.

28.    Cochran is sued in both his individual capacity and his official capacity as Sheriff of Washington County.

29.    In his individual capacity, Cochran is personally liable for his intentional violations of Plaintiff's constitutional rights and his participation in the corrupt scheme described herein.

30.    At all times relevant, Cochran took an oath to uphold the Constitution and laws of the United States and the State of Georgia, which oath he willfully and intentionally violated.

**Johnny E.C. Vines**

28.    Defendant Johnny Vines is a licensed attorney practicing law in the State of Georgia.

29.    Vines maintained a law office in Vidalia, Georgia.

30.    Defendant Johnny Vines regularly practiced in Washington County, Georgia.

31.    Defendant Johnny Vines participated in the corrupt scheme by accepting referrals from Sheriff Cochran, receiving payment from criminal defendants, and receiving favorable treatment for his clients from Solicitor General Howard.

32.    Defendant Johnny Vines is sued in his individual capacity for his knowing and intentional participation in the corrupt enterprise described herein.

33.    Although Defendant Johnny Vines did not act under color of state law, he engaged in a conspiracy with state actors Howard and Cochran to deprive Plaintiff of his constitutional rights, thereby rendering him liable under 42 U.S.C. § 1983.

**Richard Hodges**

34.    Defendant Richard Hodges is an individual and resident of Washington County, Georgia.

35.    Defendant Richard Hodges resides at 500 Panther Branch Rd., Sandersville, GA, and he may be served with this complaint and a summons at this address.

36.    Defendant Richard Hodges is the father of Defendant Ryan Christopher Hodges.

37.    Defendant Richard Hodges was a direct perpetrator of the aggravated battery upon Plaintiff Stanley Barfield on May 26, 2024.

38.    Defendant Richard Hodges also aided and abetted Defendant Ryan Christopher Hodges in avoiding criminal punishment in his 1st and 2nd DUI-related arrests.

**Ryan Christopher Hodges**

39.    Defendant Ryan Christopher Hodges is an individual and resident of Washington County, Georgia.

40.    Defendant Ryan Christopher Hodges resides at 500 Panther Branch Rd., Sandersville, GA, and he may be served with this complaint and a summons at this address.

41.    Defendant Ryan Christopher Hodges was the direct perpetrator of the aggravated battery upon Plaintiff Stanley Barfield on May 26, 2024.

42.    Defendant Ryan Christopher Hodges was the beneficiary of the corrupt scheme operated by Defendants Howard, Cochran, and Vines, receiving favorable treatment in two prior alcohol-related incidents that should have resulted in his prosecution, conviction, and/or incarceration.

43.    At the time of the battery against Plaintiff, Defendant Ryan Christopher Hodges should have been incarcerated or under strict supervision had he been properly prosecuted for his prior offenses.

**Jason Prince**

44. Defendant Jason Prince is an individual and resident of Washington County,

Georgia.

45.     Defendant Jason Prince participated in the aggravated battery upon Plaintiff Stanley Barfield on May 26, 2024, acting in concert with Defendants Richard Hodges and Ryan Christopher Hodges.

46.     Upon information and belief, Prince has also been the subject of criminal charges in Washington County and may have received favorable treatment through the same corrupt scheme.

47.     Prince is sued in his individual capacity for his tortious conduct.

**Washington County, Georgia**

48.     Defendant Washington County, Georgia is a political subdivision of the State of Georgia organized under the laws of Georgia.

49.     Washington County is a "person" subject to suit under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

50.     Washington County is responsible for the operations of the Washington County Sheriff's Office and the Office of the Solicitor General.

51.     Washington County employed Defendants Howard and Cochran and is liable for their conduct pursuant to the principles established in *Monell* and its progeny.

52.     Washington County maintained customs, policies, and practices that caused the violations of Plaintiff's constitutional rights, including but not limited to:

- Failure to supervise or discipline Howard and Cochran
- Failure to implement policies against conflicts of interest and corruption
- Failure to train employees regarding constitutional requirements
- Deliberate indifference to obvious risks to public safety
- Ratification of Howard's and Cochran's corrupt practices through inaction

## FACTUAL ALLEGATIONS

### The Corruption Scheme

53.     Beginning no later than 2021 and continuing through at least May 2024, Defendants Howard, Cochran, and Vines operated a systematic corruption scheme in Washington County, Georgia.

54.     This scheme constituted a corrupt enterprise designed to generate financial benefit for the participants while depriving citizens of their constitutional rights to due process and equal protection of law.

### THE IMPROPER SCHEME

### Referrals by Sheriff Cochran

55.     When select individuals were arrested for DUI and other alcohol-related offenses in Washington County, Sheriff Cochran referred some arrestees to attorney Johnny Vines for legal representation.

56.     Some DUI arrestees received preferential treatment directly from Sheriff Joel Cochran.

57.     Some DUI arrestees were referred to attorney Johny E.C. Vines by Sheriff Cochran.

58.     These referrals were made while arrestees were in custody at the Washington County jail and were particularly vulnerable to suggestion and coercion.

59.     Cochran represented to arrestees that Vines was an attorney who could provide them with effective representation.

60.     Cochran failed to disclose to arrestees that he had a corrupt arrangement with Vines and Howard.

61.     Upon information and belief, Cochran received financial benefit from these referrals, either directly from Vines or indirectly through some other arrangement.

### Payment to Vines

62.     Arrestees who followed Cochran's referral retained Vines as their attorney and paid him legal fees.

63.     Upon information and belief, these fees were substantial, typically ranging from several thousand dollars to tens of thousands of dollars depending on the charges.

64.     Upon information and belief, Vines split these fees with Cochran and/or Howard, or provided them with other financial benefits.

**Favorable Treatment by Howard**

65.     After defendants retained Vines as counsel, Solicitor General Howard provided systematically favorable treatment to these defendants.

66.     This favorable treatment included:

(a) Dismissal of charges despite strong evidence,

(b) No formal accusation of driving under the influence being filed against certain defendant arrested for driving under the influence,

(c) Reduction of serious charges to minor offenses,

(d) Failure to seek license suspension or other appropriate penalties,

(e) Entry of pretrial diversion without appropriate conditions

67.     This favorable treatment was not based on legitimate prosecutorial discretion, but rather was the result of the corrupt arrangement between Howard, Cochran, and Vines.

68.     Defendants who were similarly situated but represented by other attorneys, or who were not represented by attorneys, did not receive similar favorable treatment.

69.     Howard's favorable treatment of Vines's clients was systematic and consistent, demonstrating a pattern rather than isolated incidents of prosecutorial discretion.

**Creation of Two-Tiered Justice System**

70.     As a result of this scheme, Washington County maintained a two-tiered justice system:

•     Defendants who could afford to pay Vines's fees and were referred by Cochran received lenient treatment

- Other defendants received standard or harsher treatment

71.    This two-tiered system violated the fundamental constitutional principle of equal justice under law.

72.    The scheme operated openly in Washington County for years, with defense attorneys, law enforcement, and court personnel aware of the pattern of favorable treatment for Vines's clients.

73.    Washington County took no action to investigate, stop, or punish this corrupt scheme despite its obvious nature and serious consequences.

**Ryan Hodges' Criminal History and the Corruption Scheme**

**First DUI Incident - May 9, 2021**

74.    On May 9, 2021, Ryan Hodges was involved in a motor vehicle accident in Washington County, Georgia, while under the influence of alcohol.

75.    At the time, Hodges was only 17 years old and therefore legally prohibited from consuming any alcohol.

76.    Deputies of the Washington County Sheriff's Office responded to the scene of the accident.

77.    The responding officer was Deputy David Raley.

78.    Deputy Raley observed that Hodges was passed out in his vehicle at a stop sign with the vehicle running and in drive.

79.    While Hodges was passed out, his foot slipped off the brake pedal and his vehicle proceeded through the intersection, resulting in a collision with another vehicle.

80.    A Georgia Uniform Motor Vehicle Accident Report was prepared for this incident, Case No. 24-03-2807.

81.    The accident report clearly documented Hodges as being "Under the Influence (U.I.)" in the section for contributing factors.

82.    The accident report narrative states: "Driver 1 was stopped at the stop sign on Hazard Road. *Driver passed out behind the wheel with the vehicle in drive. *Driver's foot released the brake pedal and the vehicle traveled forward crossing

Tenmile Oconee Rd striking a roadside directional sign before coming to rest. *No report of injuries at time of accident. *Vehicle was removed from scene by owner's father."

83.    Despite this overwhelming evidence of impaired driving, Sheriff Cochran intervened to prevent Hodges from being charged with DUI or any alcohol-related offense.

84.    Upon best information and belief, Defendant David Raley assisted in the concealment of this DUI charge.

85.    Ryan Christopher Hodges was ultimately charged only with minor traffic violations: failure to exercise due care and making an improper turn.

86.    No DUI charges were filed.

87.    Hodges received no license suspension, was not required to attend DUI school, and despite being underage, was not required to attend any alcohol counseling or substance abuse treatment.

88.    This extraordinary leniency was the direct result of Sheriff Cochran's corrupt interference and his relationship with the Hodges family.

89.    Had Ryan Christopher Hodges been properly accused and prosecuted for this DUI incident, he would have faced:

- Criminal prosecution and likely conviction
- License suspension
- Mandatory DUI school
- Mandatory alcohol treatment given his age
- Probation with alcohol monitoring
- Possible jail time

90.    The failure to properly charge and prosecute Ryan Christopher Hodges for this incident was a violation of equal protection, as similarly situated defendants who lacked Cochran's protection were charged with DUI under similar or less egregious circumstances.

**Second DUI Incident - March 31, 2024**

91.    On March 31, 2024, despite having received extraordinary leniency for his first alcohol-related incident, Ryan Hodges was again arrested for driving under the influence of alcohol in Washington County.

92.    At the time of this arrest, Hodges was 20 years old and still under the legal drinking age.

93.    The arresting officer was Deputy Ben Perdue of the Washington County Sheriff's Office.

94.    Deputy Perdue observed Hodges's vehicle parked in the roadway on GA Highway 272 near Panther Branch Road at approximately 2:25 AM.

95.    The vehicle was parked with the engine running and lights on, positioned diagonally across the lane of travel with three tires on the pavement and one tire on the grassy shoulder.

96.    Deputy Perdue observed Hodges asleep in the driver's seat with the vehicle in park.

97.    Deputy Perdue knocked on the window multiple times without getting a response from Hodges.

98.    When Deputy Perdue opened the driver's door, he observed open beer cans in the vehicle, including in the center console cup holder and on the floorboard of the passenger side.

99.    Deputy Perdue detected the odor of an unknown alcoholic beverage in the passenger compartment of the vehicle.

100.    When Hodges finally awoke, his eyes were bloodshot and glassy, and he exhibited other signs of intoxication.

101.    Hodges admitted to Deputy Perdue that he had consumed "a couple of beers" and later stated "four or five" beers.

102.    Hodges admitted that he had been out hunting, had been working and hunting all day, and was tired from the full day.

103.    Hodges was charged with:

- DUI - Driving Under the Influence (.08 gm, Over 21) - O.C.G.A. § 40-6-391(a)(5)

- Failure to Maintain Lane - O.C.G.A. § 40-6-48

- DUI - Alcohol, .08 GM, OVER 21 - O.C.G.A. § 40-6-391A5

104.    An incident report was filed with the Sandersville Police Department, Case No. 24040303, documenting Hodges's arrest for "Speeding," "Failure to Maintain Lane," and "DUI-Alcohol .08 GM, Over 21."

105.    The incident report narrative provides extensive detail about Hodges's impaired condition and performance on field sobriety tests.

106.    Following this arrest, Sheriff Cochran was unwilling to simply hide this DUI incident as he had done with the first one, likely because the incident was too well documented and involved another law enforcement agency.

107.    Instead, Sheriff Cochran referred Hodges to attorney Johnny Vines, representing that Vines could help him.

108.    Hodges retained Vines to represent him for his March 31, 2024 DUI charges.

109.    Upon information and belief, Hodges paid Vines substantial legal fees for this representation.

110.    As part of the corrupt scheme, Solicitor General Michael Howard subsequently dismissed ALL charges against Hodges, including the DUI charges, on May 20, 2024.

111.    The dismissal document filed in Washington County State Court, Case No. 2024-535-JAD, states that the charges were dismissed for "Insufficient evidence to sustain a successful prosecution."

112.    This stated reason for dismissal was false and pretextual.

113.    The actual evidence in the case was overwhelming and more than sufficient to sustain a conviction:

- Hodges was found passed out in a running vehicle on the roadway

- Open containers of alcohol were observed in the vehicle

- Hodges admitted to consuming 4-5 beers

- Hodges exhibited numerous signs of intoxication

- Hodges failed field sobriety tests

- Hodges was underage and legally prohibited from consuming any alcohol

114.    The arresting officer, Deputy Ben Perdue, was and remains employed by the Washington County Sheriff's Office and was available to testify.

115.    Video evidence of the incident existed and would have been available for trial.

116.    The dismissal was not based on any legitimate evidentiary deficiency, but rather was the result of the corrupt arrangement between Howard and Vines.

117.    Had this case gone to trial, Hodges would almost certainly have been convicted of DUI based on the overwhelming evidence.

118.    A DUI conviction for this incident would have resulted in:

- Significant jail time (likely 12 months given the repeat nature of the offense)

- Lengthy license suspension

- Substantial fines

- Mandatory DUI school and alcohol treatment

- Probation with alcohol monitoring

- Installation of ignition interlock device

**Third Incident - Aggravated Battery on Stanley Barfield - May 26, 2024**

119.    On May 26, 2024, Ryan Hodges was publicly and consuming alcohol in Washington County, Georgia.

120.    Hodges, still under the age of 21, was violating the law by consuming alcohol.

121.    Hodges had consumed sufficient alcohol to be intoxicated.

122.    While intoxicated, Hodges encountered Stanley Barfield at a location on Matthews Road in Washington County.

123.    Without provocation, Hodges attacked Barfield.

124.    Hodges struck Barfield multiple times about the head and body, causing serious physical injury.

125.    During this attack, Defendant Jason Prince was present and participated in the battery by also striking Barfield.

126.    Hodges and Prince acted in concert to assault Barfield.

127.    The attack caused Barfield to suffer:

• Severe head trauma,

• Facial injuries,

• Bodily injuries

• Pain and suffering

• Medical expenses

• Emotional distress

128.    As a direct result of the attack, Christopher Ryan Hodges was indicted for aggravated battery in Washington County Superior Court, Case No. SU-CR-2025-31-T58.

129.    This attack was proximately caused by the corrupt scheme operated by Defendants Howard, Cochran, and Vines.

130.    Had Ryan Christopher Hodges been properly prosecuted for his first incident in May 2021, he would have:

(a) Been convicted of DUI,

(b) Served jail time or been placed on probation with strict alcohol monitoring,

(c) Had his license suspended, limiting his mobility

(d) Been required to attend alcohol treatment

(e) Been deterred from future excessive alcohol consumption

131.    Had Hodges been properly prosecuted for his second DUI incident in March 2024, he would have:

(a) Been convicted of DUI (second offense)

(b) Served significant jail time

(c) Had his license suspended for an extended period

(d) Been required to complete intensive alcohol treatment

(e) Been on probation at the time of the May 26, 2024 attack

(f) Possibly been in custody and unable to attack Barfield

(g) Been deterred from future excessive alcohol consumption

132.    Instead, because of the corruption scheme, Hodges:

- Faced no consequences for his first DUI

- Faced no consequences for his second DUI

- Was emboldened to continue drinking alcohol excessively

- Remained without probationary supervision

- Received no alcohol treatment or intervention

- Had no incentive to modify his dangerous behavior

133.    The attack on Barfield was the direct, natural, and foreseeable consequence of Defendants' corrupt scheme.

134.    It was foreseeable that releasing a repeat DUI offender without consequences would lead to continued alcohol abuse and potentially violent and/or erratic behavior.

135.    It was foreseeable that an intoxicated person, particularly one with a history of irresponsible behavior, might commit violent acts.

136.    The corrupt scheme created an obvious and substantial risk to public safety that materialized in the attack on Barfield.

**Pattern of Similar Dismissals**

137.    Upon information and belief, Ryan Christopher Hodges was not the only defendant to receive favorable treatment through this corrupt scheme.

138.    An examination of Washington County State Court records reveals a pattern of dismissals and favorable plea agreements for defendants represented by Johnny Vines.

139.    Upon information and belief, the following defendants also received favorable treatment after being represented by Defendant Johnny Vines and referred by Defendant Joel Cochran:

| Defendant's Name | Case No. |
| --- | --- |
| Gettis C. McGhee | STWR2024000178 |
| Henry Lee Wilson | STSR2023000838 |
| James Lee Hood | STWR2022000452 |
| Fredy  Rodriguez Furita | STSR2024001235 |
| Dalton Reece Hilliard | STSR2023000944 |
| Howard Lamar Brantley | STWR2023000168 |
| Christopher Helton | STWR2024000134 |
| Jess Willard Hilliard | STSR2023000921 |
| Thomas Wade Register | STWR2022000524 |
| Harry Earl Perkins | STSR2022001719 |
| Terrence Tracey Dawson | STSR2022001380 |
| Jason Francis Bryan | STSR2023000917 |
| Omari M. Brown | STSR2024001002 |
| Sonya Monika Yorker | STSR2021001032 |
| Durran Gavin Smith | STSR2022001492 |

140.    In many of these cases, the charges were dismissed with a notation of "insufficient evidence" or similar justification, despite the fact that in many cases the evidence was substantial and sufficient to support a conviction.

141.    In some cases, Howard added notations such as "Pre-Trial Diversion Completed" or "Completed Pre-Trial Diversion," despite there being no formal pre-trial diversion program in place in Washington County State Court and no documentation of the terms or completion of any such diversion.

142.    This pattern of dismissals for Vines's clients, compared to the treatment of defendants represented by other attorneys or unrepresented defendants, demonstrates the systematic nature of the corruption scheme.

143.    Upon information and belief, defendants charged with DUI in Washington County who were represented by attorneys other than Vines, or who were unrepresented, did not receive similar favorable treatment and were prosecuted to conviction at significantly higher rates.

144.    This disparate treatment based on attorney representation, rather than the facts and law of each case, violated the equal protection rights of all defendants and citizens in Washington County.

**Financial Benefit to Participants**

145.    The corruption scheme generated substantial financial benefit for its participants.

146.    Upon information and belief, attorney Johnny Vines charged substantial legal fees to DUI defendants, typically in the range of $5,000 to $20,000 per case depending on the seriousness of the charges.

147.    Upon information and belief, Vines shared a portion of these fees with Sheriff Cochran as compensation for the referrals.

148.    Upon information and belief, Vines also provided financial benefit to Solicitor General Howard, either through direct payments or through other arrangements such as:

(a) Political contributions

(b) Campaign support

(c) Personal favors

(d) Business opportunities

(e) Other forms of value

149.    Upon information and belief, Howard also received payment directly from some defendants, such as Ryan Hodges, for his defense representation in

Superior Court, creating an additional conflict of interest and financial incentive to provide favorable treatment.

150.    The expectation of financial benefit was a motivating factor for each participant in the scheme and was the quid pro quo that ensured the scheme's continuation.

151.    The corruption scheme affected interstate commerce and involved the use of interstate communications and facilities, thereby providing a basis for federal jurisdiction under RICO and other federal statutes.

152.    Specifically:

(a) Defendants used U.S. Mail to send and receive court filings, payments, and other communications in furtherance of the scheme;

(b) Defendants used interstate wire communications (telephone, email, text messages) to coordinate the scheme;

(c) Defendants used financial institutions whose operations affect interstate commerce to transfer payments;

(d) The scheme affected the rights of citizens to travel interstate without fear of corruption in law enforcement, and

153.    These uses of interstate facilities were integral to the operation of the scheme and were made in furtherance of the conspiracy.

**Washington County's Liability County's Knowledge of the Scheme**

154.    The corruption scheme operated openly in Washington County for years.

155.    Members of the Washington County Board of Commissioners, including Chairman Mel Daniel, Jr., were aware or should have been aware of the scheme.

156.    Other officials in Washington County government were aware or should have been aware of the scheme.

157.    Defense attorneys practicing in Washington County were aware of the pattern of favorable treatment for Vines's clients.

158.    Court personnel in the Washington County State Court were aware of the pattern of dismissals and favorable plea agreements.

159.   The scheme was the subject of discussion and complaint among attorneys, law enforcement officers, and citizens.

160.   Despite this knowledge, Washington County took no action to investigate, stop, or punish the corrupt scheme.

**County's Failure to Act**

161.   Washington County, through its Board of Commissioners and other officials, had authority and responsibility to supervise Howard and Cochran.

162.   Washington County had authority to investigate complaints of corruption and misconduct by Howard and Cochran.

163.   Washington County had authority to discipline, suspend, or remove Howard and Cochran for misconduct.

164.   Washington County had authority to implement policies and procedures to prevent conflicts of interest and corruption.

165.   Washington County had authority to audit the operations of the Solicitor's Office and Sheriff's Office to detect corruption.

166.   Washington County failed to exercise any of these authorities despite knowledge of the corruption scheme.

167.   Washington County's failure to act constituted deliberate indifference to obvious risks to constitutional rights and public safety.

168.   This deliberate indifference was a proximate cause of the violations of Plaintiff's rights and the injury he suffered.

**County's Ratification of Misconduct**

169.   Upon information and belief, Washington County officials were informed of the corruption scheme by citizens, attorneys, or other sources.

170.   Despite being informed, Washington County took no corrective action.

171.   By failing to investigate or discipline Howard and Cochran after being informed of their misconduct, Washington County effectively ratified their conduct.

172.   This ratification makes Washington County liable for the constitutional violations.

**Custom and Practice**

173.    The corruption scheme constituted a custom or practice of Washington County, Georgia.

174.    This custom or practice was so widespread and well-settled as to constitute the "custom" of the county for purposes of *Monell* liability.

175.    The custom was implemented by final policymakers (Howard and Cochran) with authority to bind the county.

176.    The custom caused the violation of Plaintiff's constitutional rights.

**Failure to Train**

177.    Washington County failed to provide adequate training to Howard, Cochran, and other officials regarding:

- Constitutional requirements for equal protection and due process,
- Prohibition on conflicts of interest,
- Ethical obligations of prosecutors and law enforcement,
- Proper exercise of prosecutorial discretion, and
- Identification and prevention of corruption

178.    The need for such training was obvious given the responsibilities of these officials and the obvious risks of constitutional violations.

179.    Washington County's failure to provide training constituted deliberate indifference to the rights of citizens.

180.    This deliberate indifference was a moving force behind the constitutional violations.

181.    As a direct and proximate result of Defendants' conduct, Plaintiff Stanley Barfield has suffered and continues to suffer significant damages.

182.    Plaintiff suffered severe physical injuries from the attack by Hodges and Prince, including:

(a) Head trauma

(b) Facial injuries

(c) Bruising and lacerations

(d) Pain and suffering

(e) Physical limitations

183.   These injuries required medical treatment and may require ongoing medical care.

184.   Plaintiff has incurred substantial medical expenses as a result of these injuries.

185.   Plaintiff may require future medical treatment for complications or long-term effects of his injuries.

186.   Plaintiff has suffered and continues to suffer significant pain and suffering as a result of his injuries.

187.   Plaintiff has suffered emotional distress, including fear, anxiety, and trauma from the attack.

188.   Plaintiff has suffered loss of enjoyment of life due to his injuries and the limitations they impose.

189.   Plaintiff has suffered humiliation and embarrassment from being the victim of a violent attack.

190.   Plaintiff has suffered deprivation of his constitutional rights to due process and equal protection.

191.   Plaintiff has been deprived of his right to have criminal laws enforced equally and fairly without corruption.

192.   Plaintiff has been denied his right to safety and security through the proper functioning of the criminal justice system.

193.   These constitutional injuries are compensable under § 1983 and entitle Plaintiff to damages even apart from his physical and economic injuries.

**COUNT I**
**42 U.S.C. § 1983 - Deprivation of Due Process**
**(Against Defendants Howard, Cochran, and Vines in their Individual Capacities and Against Washington County)**

194.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

195.    The Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law."

196.    This guarantee applies to the actions of state and local officials through the operation of 42 U.S.C. § 1983.

197.    Plaintiff had a protected liberty interest in the proper functioning of the criminal justice system, free from corruption and conflicts of interest.

198.    Plaintiff had a protected liberty interest in being free from violent crime and in having criminal laws enforced fairly and without corruption.

199.    Plaintiff had a substantive due process right to be free from government conduct that "shocks the conscience."

200.    Defendants Howard and Cochran, acting under color of state law, deprived Plaintiff of these due process rights through their operation of the corruption scheme described above.

201.    Specifically, Defendants' conduct deprived Plaintiff of due process by:

•    Creating a corrupt enterprise that prevented proper prosecution of dangerous offenders,

•    Allowing social, political, and financial considerations – rather than public safety – to drive prosecutorial decisions,

•    Enabling defendants that engaged in unsafe use of alcohol to avoid supervision that violent criminals to remain free to harm others

•    Denying citizens the protection of law enforcement and prosecution

•    Engaging in conduct that shocks the conscience through its brazen corruption and disregard for public safety

202.    Defendant Vines, although not a state actor, engaged in a conspiracy with state actors Michael Howard and Joel Cochran to deprive Plaintiff of his due process rights and is, therefore, liable under § 1983.

203.    Defendant Washington County is liable for these due process violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because:

- The violations were carried out pursuant to official county policy, custom, or practice;

- The violations were committed by final policymakers whose decisions bind the county;

- The county failed to adequately train and supervise its officials, constituting deliberate indifference;

- The county ratified the misconduct by failing to act despite knowledge of the scheme, and

204.    Defendants' conduct was intentional, willful, wanton, and in reckless disregard of Plaintiff's constitutional rights.

205.    As a direct and proximate result of Defendants' deprivation of Plaintiff's due process rights, Plaintiff has suffered the damages described above.

## COUNT II
### 42 U.S.C. § 1983 - Deprivation of Equal Protection
### (Against Defendants Howard, Cochran, and Vines in their Individual Capacities and Against Washington County)

206.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

207.    The Fourteenth Amendment to the United States Constitution guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

208.    This guarantee applies to the actions of state and local officials through the operation of 42 U.S.C. § 1983.

209.    The Equal Protection Clause requires that criminal laws be enforced equally and without arbitrary discrimination.

210. The Equal Protection Clause prohibits government officials from creating different classes of citizens who are treated differently under the law based on arbitrary or improper criteria.

211. Defendants Howard and Cochran, acting under color of state law, violated Plaintiff's equal protection rights through their operation of the corruption scheme described above.

212. Specifically, Defendants' conduct violated equal protection by:

• Creating a two-tiered system of justice based on political/social relationships, attorney representation, and ability to pay;

• Treating similarly situated defendants differently based on whether they were represented by Johnny Vines;

• Treating similarly situated defendants differently based on whether they were referred to Johnny Vines by Defendant Joel Cochran;

• Treating similarly situated defendants differently based on whether they were politically and/or socially connected with Defendant Joel Cochran;

• Denying equal justice under law through systematic favoritism, and

• Arbitrarily selecting which defendants would receive lenient treatment based on improper criteria (financial benefit to officials) rather than legitimate factors (evidence, defendant's history, public safety)

213. The classification created by Defendants' scheme (defendants referred to Vines versus all others) was not based on any legitimate government interest and was instead based solely on the corrupt financial arrangement between the defendants.

214. Even if some legitimate interest could be identified, the classification bore no rational relationship to that interest and was therefore unconstitutional.

215. The scheme had a discriminatory impact on Plaintiff and other citizens by denying them equal protection of law enforcement and prosecution.

216.    The scheme was implemented with discriminatory intent—the purpose was to benefit the participants in the scheme, not to serve any legitimate law enforcement or prosecutorial objective.

217.    Defendant Vines, although not a state actor, engaged in a conspiracy with state actors Howard and Cochran to deprive Plaintiff of his equal protection rights and is therefore liable under § 1983 pursuant to *Dennis v. Sparks*, 449 U.S. 24 (1980).

218.    Defendant Washington County is liable for these equal protection violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the reasons stated in Count I.

219.    Defendants' conduct was intentional, willful, wanton, and in reckless disregard of Plaintiff's constitutional rights.

220.    As a direct and proximate result of Defendants' deprivation of Plaintiff's equal protection rights, Plaintiff has suffered the damages described above.

### COUNT III
### 42 U.S.C. § 1983 - Denial of Access to Courts
### (Against Defendants Howard, Cochran, and Vines in their Individual Capacities and Against Washington County)

221.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

222.    The First and Fourteenth Amendments to the United States Constitution guarantee citizens meaningful access to the courts.

223.    This right includes the right to have courts function fairly and without corruption.

224.    This right includes the right to have criminal defendants properly prosecuted so that the judicial system can function to protect citizens and administer justice.

225.    Defendants Howard and Cochran, acting under color of state law, denied Plaintiff access to courts through their corruption scheme.

226.    Specifically, Defendants' conduct denied access to courts by:

(a) Corrupting the judicial process through systematic bribery and favoritism;

(b) Preventing the courts from properly adjudicating criminal cases;

(c) Denying victims (including Plaintiff) the opportunity to see justice administered, and

(d) Undermining public confidence in the courts and the rule of law

227.    Plaintiff was directly harmed by this denial of access because the corrupt scheme prevented proper prosecution of Hodges, resulting in Hodges remaining free to commit the battery on Plaintiff.

228.    Defendant Vines, although not a state actor, engaged in a conspiracy with state actors Howard and Cochran to deny Plaintiff access to courts and is therefore liable under § 1983.

229.    Defendant Washington County is liable for this denial of access to courts under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the reasons stated in Count I.

230.    Defendants' conduct was intentional, willful, wanton, and in reckless disregard of Plaintiff's constitutional rights.

231.    As a direct and proximate result of Defendants' denial of Plaintiff's right of access to courts, Plaintiff has suffered the damages described above.

## COUNT IV
### 42 U.S.C. § 1983 - State-Created Danger
### (Against Defendants Howard and Cochran in their Individual Capacities and Against Washington County)

232.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

233.    Although the Due Process Clause generally does not impose an affirmative obligation on the state to protect citizens from private violence, the state may not affirmatively create or increase a danger to citizens.

234.    Under the "state-created danger" doctrine, a state actor may be held liable under § 1983 when:

- The state actor's affirmative conduct created or increased the danger to the plaintiff

- The state actor's conduct placed the plaintiff in danger or rendered the plaintiff more vulnerable to danger

- The state actor knew or should have known that its conduct would create or increase the risk of harm

- The state actor's conduct was conscience-shocking

235. Defendants Howard and Cochran created and increased the danger to Plaintiff through their corrupt scheme.

236. Specifically, by improperly dismissing Hodges's DUI charges and allowing him to remain free without consequences, Defendants:

- Created a danger by releasing a dangerous offender who should have been incarcerated or under strict supervision

- Increased the danger by emboldening Hodges to continue his pattern of alcohol abuse and irresponsible behavior

- Rendered Plaintiff more vulnerable by allowing a dangerous individual to remain in the community

- Knew or should have known that releasing repeat DUI offenders without consequences creates a risk of continued criminal behavior, including violence

237. Defendants' conduct was conscience-shocking because it involved:

- Deliberate corruption for financial gain

- Reckless disregard for public safety

- Systematic pattern affecting numerous defendants

- Obvious and substantial risks to the public

- Complete abandonment of official duties and obligations

238. Defendants' state-created danger was a proximate cause of the attack on Plaintiff by Hodges.

239.   But for Defendants' corrupt scheme, Hodges would have been incarcerated or under supervision and would not have been free to attack Plaintiff.

240.   Defendant Washington County is liable for this state-created danger under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the reasons stated in Count I.

241.   As a direct and proximate result of Defendants' creation of danger to Plaintiff, Plaintiff has suffered the damages described above.

**COUNT V**
**Federal RICO - 18 U.S.C. § 1962(c)**
**(Against Defendants Howard, Cochran, and Vines in Their Individual Capacities)**

242.   Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

243.   18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

**The Enterprise**

244.   At all times relevant to this Complaint, there existed an association-in-fact enterprise (the "Enterprise") consisting of Defendants Michael Howard, Joel Cochran, and Johnny Vines.

245.   The Enterprise constituted an ongoing organization with a common purpose: to generate financial benefit for its members through corruption of the criminal justice system in Washington County, Georgia.

246.   The Enterprise had an ascertainable structure distinct from the pattern of racketeering activity.

247.   The structure of the Enterprise included:

- Cochran's role as the "referrer" who identified potential clients and directed them to Vines

- Vines's role as the "intermediary" who received referrals, collected fees from clients, and distributed benefits to other members

- Howard's role as the "fixer" who provided favorable treatment to Vines's clients through dismissals and lenient plea agreements

- Regular communication and coordination among members to ensure smooth operation of the scheme

248. The Enterprise engaged in, and its activities affected, interstate commerce because:

- The Enterprise used U.S. Mail to send and receive payments, court filings, and other communications

- The Enterprise used interstate wire communications (telephone, email, text messages) to coordinate its activities

- The Enterprise used financial institutions whose operations affect interstate commerce

- The Enterprise's corruption of the justice system affected the ability of citizens to travel interstate and engage in commerce without fear of arbitrary law enforcement

249. The Enterprise existed separately from the pattern of racketeering activity.

250. The Enterprise had an existence and purpose beyond the commission of predicate acts—it was an ongoing criminal organization designed to generate continuing financial, political, and social benefits for its members.

**The Pattern of Racketeering Activity**

251. Defendants Howard, Cochran, and Vines conducted and participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

252. "Racketeering activity" is defined in 18 U.S.C. § 1961(1) to include numerous criminal offenses, including mail fraud (18 U.S.C. § 1341), wire fraud (18

U.S.C. § 1343), extortion under color of official right (18 U.S.C. § 1951), obstruction of justice (18 U.S.C. § 1503), and bribery (18 U.S.C. § 201).

253.    A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5).

254.    Defendants committed numerous predicate acts of racketeering activity, including but not limited to:

**Mail Fraud (18 U.S.C. § 1341)**

255.    Defendants devised and intended to devise a scheme and artifice to defraud citizens of Washington County of their intangible right to honest services from their public officials.

256.    Defendants used or caused to be used the United States Postal Service in furtherance of this scheme by:

- Mailing court filings containing false representations about dismissals
- Mailing payments and checks in furtherance of the scheme
- Mailing correspondence coordinating the scheme
- Mailing other materials in furtherance of the scheme

257.    Each use of the mail in furtherance of the scheme constitutes a separate act of mail fraud under 18 U.S.C. § 1341.

258.    These acts of mail fraud are "racketeering activity" as defined in 18 U.S.C. § 1961(1).

**Wire Fraud (18 U.S.C. § 1343)**

259.    Defendants devised and intended to devise a scheme and artifice to defraud citizens of Washington County of their intangible right to honest services from their public officials.

260.    Defendants used or caused to be used interstate wire communications in furtherance of this scheme by:

(a) Using telephone calls to coordinate referrals, dismissals, and payments

(b) Using email to communicate about cases and coordinate activities

(c) Using text messages to arrange meetings and discuss the scheme

(d) Using electronic fund transfers to transmit payments

(e) Using other electronic communications in furtherance of the scheme

261.    Each use of wire communications in furtherance of the scheme constitutes a separate act of wire fraud under 18 U.S.C. § 1343.

262.    These acts of wire fraud are "racketeering activity" as defined in 18 U.S.C. § 1961(1).

**Extortion Under Color of Official Right (18 U.S.C. § 1951 - Hobbs Act)**

263.    Defendants Howard and Cochran, as public officials, obtained property (money and other benefits) from criminal defendants under color of official right.

264.    Specifically, Howard and Cochran induced defendants to pay money to Vines with the understanding that payment would result in favorable treatment, thereby obtaining property that they were not entitled to receive.

265.    This conduct affected interstate commerce by:

(a) Interfering with the movement of persons and goods in interstate commerce

(b) Using interstate facilities and communications

(c) Affecting financial institutions whose operations impact interstate commerce

266.    Each instance of obtaining property under color of official right constitutes a separate violation of 18 U.S.C. § 1951.

267.    These acts are "racketeering activity" as defined in 18 U.S.C. § 1961(1).

**Obstruction of Justice (18 U.S.C. § 1503)**

268.    Defendants corruptly influenced, obstructed, and impeded the due administration of justice by:

(a) Improperly dismissing meritorious criminal charges

(b) Manipulating prosecutorial decisions for financial gain

(c) Corrupting the judicial process through bribery and favoritism

(d) Preventing courts from properly adjudicating criminal cases

269.    These acts were done corruptly with the intent to obstruct justice and benefit the participants in the scheme.

270.    Each instance of corrupt influence on judicial proceedings constitutes a separate violation of 18 U.S.C. § 1503.

271.    These acts are "racketeering activity" as defined in 18 U.S.C. § 1961(1).

**Bribery (18 U.S.C. § 201)**

272.    Defendants Howard and Cochran, as public officials, corruptly demanded, sought, received, accepted, and agreed to receive and accept things of value in return for being influenced in the performance of official acts.

273.    Specifically, Howard and Cochran received financial benefits in exchange for:

- Referring defendants to Vines (Cochran)
- Dismissing or reducing charges (Howard)
- Providing other favorable treatment (both)

274.    These things of value were provided with the intent to influence official acts.

275.    Each instance of demanding, receiving, or accepting things of value in exchange for official acts constitutes a separate violation of 18 U.S.C. § 201.

276.    These acts are "racketeering activity" as defined in 18 U.S.C. § 1961(1).

**Specific Predicate Acts**

277.    Without limitation, the following constitute specific predicate acts of racketeering activity:

**Predicate Act 1 - May 2021 (Hodges First DUI)**

- Cochran's corrupt intervention to prevent charges against Hodges
- Use of telephone and/or mail to coordinate this intervention
- Obstruction of justice by preventing proper prosecution

**Predicate Act 2 - March 2024 (Hodges Second DUI)**

- Cochran's referral of Hodges to Vines
- Use of telephone, email, or in-person communication to make referral
- Extortion under color of official right by inducing payment for favorable treatment

**Predicate Act 3 - March-May 2024**

- Payment by Hodges to Vines for legal representation

- Use of interstate wire transfer or mail to transmit payment

- Wire fraud or mail fraud in furtherance of scheme

**Predicate Act 4 - May 20, 2024**

- Howard's corrupt dismissal of Hodges's DUI charges

- Filing of dismissal document containing false representation of "insufficient evidence"

- Mail fraud and obstruction of justice

**Predicate Act 5 - June 2024**

- Howard's entry of appearance as defense counsel for Hodges while Hodges remained subject to state court prosecution

- Use of mail or electronic filing system to file entry of appearance

- Mail fraud or wire fraud in furtherance of scheme

**Predicate Acts 6-25**

- Similar acts involving other defendants who received favorable treatment through the scheme (McGhee, Wilson, Hillard, Rodriguez, Helton, Register, Hood, Perkins, Yorker, Smith, Dawson, Bryan, Brown, and others)

- Each defendant's case involved multiple predicate acts including referral, payment, corrupt dismissal, and use of mail/wire communications

278. The predicate acts described above are related to each other in that they:

- Had the same purpose (generating financial benefit through corruption)

- Involved the same participants (Howard, Cochran, Vines, and their clients)

- Used similar methods (referral, payment, dismissal)

- Had similar results (defendants avoiding proper prosecution)

- Were part of a continuing scheme

279. The predicate acts pose a threat of continued criminal activity because:

- The scheme operated continuously for years

- Cochran remains in office and retains the ability to continue the scheme
- Vines continues to practice law
- The systems that enabled the scheme remain in place
- Absent court intervention, the scheme will continue

**Individual Defendants' Participation**

280.    Each individual Defendant conducted or participated in the conduct of the Enterprise's affairs through the pattern of racketeering activity described above.

**Defendant Howard:**

281. Howard participated in the Enterprise by:

- Agreeing to provide favorable treatment to defendants referred by Cochran to Vines
- Receiving financial benefits from the scheme
- Systematically dismissing charges against Vines's clients
- Using his official position as Solicitor General to further the scheme
- Communicating with co-conspirators to coordinate activities
- Taking affirmative steps to conceal the scheme

**Defendant Cochran**

282. Cochran participated in the Enterprise by:

- Systematically referring DUI arrestees to Vines
- Using his position as Sheriff to identify potential clients
- Receiving financial benefits from referrals
- Coordinating with Howard to ensure favorable treatment
- Taking affirmative steps to protect certain defendants from prosecution
- Communicating with co-conspirators to coordinate activities

**Defendant Vines**

283. Vines participated in the Enterprise by:

- Accepting referrals from Cochran
- Collecting fees from defendants
- Distributing financial benefits to Howard and Cochran

- Representing to clients that he could obtain favorable treatment
- Coordinating with Howard regarding case outcomes
- Serving as the financial conduit for the scheme

**Causation and Injury**

284.    Plaintiff was injured in his business or property by reason of Defendants' violations of 18 U.S.C. § 1962(c).

285.    Specifically, Plaintiff's injury was directly caused by the Enterprise's pattern of racketeering activity because:

- But for the corrupt dismissal of Hodges's DUI charges, Hodges would have been incarcerated or supervised
- The dismissals were the direct result of predicate acts of racketeering (mail fraud, wire fraud, bribery, obstruction of justice, extortion)
- These predicate acts proximately caused Hodges to be free to attack Plaintiff
- Plaintiff's injuries are the direct and foreseeable consequence of the Enterprise's activities

286.    Plaintiff's injuries include:

- Physical injuries from the battery
- Medical expenses
- Lost wages and earning capacity
- Pain and suffering
- Emotional distress
- Deprivation of property interest in physical security and integrity

287.    These injuries are compensable under 18 U.S.C. § 1964(c).

## COUNT VI
### Federal RICO - 18 U.S.C. § 1962(d) - RICO Conspiracy
### (Against Defendants Howard, Cochran, and Vines in their Individual Capacities)

288.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

289.    Beginning no later than 2021 and continuing through at least May 2024, Defendants Howard, Cochran, and Vines conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of the Enterprise through a pattern of racketeering activity.

290.    The conspiracy had the following elements:

291.    Defendants agreed to conduct the affairs of the Enterprise through a pattern of racketeering activity.

292.    This agreement was evidenced by:

•    The systematic pattern of referrals from Cochran to Vines

•    The consistent favorable treatment provided by Howard to Vines's clients

•    The financial arrangements among the conspirators

•    The coordination of activities among the conspirators

•    The duration and consistency of the scheme

293.    The agreement did not need to be formal or explicit; it could be inferred from the conduct of the parties and the interdependence of their activities.

294.    Each Defendant knew the general nature of the conspiracy and agreed to participate in it.

295.    Howard knew that:

(a) Cochran was referring defendants to Vines,

(b) Cochran told members of Howard's office that a specific defendant should contact Defendant Vines regarding a DUI,

(c) These defendants were paying substantial fees to Vines,

(d) Howard was expected to provide favorable treatment to these defendants,

(e) Financial benefits were being exchanged, and

(f) The scheme was unlawful and corrupt.

296.    Cochran knew that:

(a) His referrals would result in payment to Vines,

(b) Howard would provide favorable treatment to Vines's clients,

(c) Financial, political, and/or social benefits would flow to him from the arrangement,

(d) The scheme was unlawful and corrupt.

297.    Vines knew that:

- He was receiving referrals from Cochran based on a corrupt arrangement,

- Howard would provide favorable treatment to his clients,

- Financial benefits needed to be shared with Howard and Cochran, and

- The scheme was unlawful and corrupt.

298.    In furtherance of the conspiracy, Defendants committed numerous overt acts, including all of the predicate acts of racketeering described in Count V and all other actions taken to further the scheme.

299.    Plaintiff was injured by reason of Defendants' RICO conspiracy.

300.    The conspiracy proximately caused Plaintiff's injuries in the same manner as described in Count V.

301.    Plaintiff is entitled to recover threefold damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT VII
## Georgia RICO - O.C.G.A. § 16-14-4(c)
### (Against Defendants Howard, Cochran, and Vines in their Individual Capacities)

302.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

303.    O.C.G.A. § 16-14-4(c) provides: "It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity."

304.    The Enterprise described in Count V also constitutes an enterprise under Georgia RICO.

305.    Defendants conducted or participated in the conduct of this Enterprise through a pattern of racketeering activity as defined by Georgia law.

306.    "Racketeering activity" under Georgia law includes numerous offenses set forth in O.C.G.A. § 16-14-3(9), including:

- Theft by taking (O.C.G.A. § 16-8-2)
- Theft by deception (O.C.G.A. § 16-8-3)
- Bribery (O.C.G.A. § 16-10-2)
- Violation of oath by public officer (O.C.G.A. § 16-10-1)
- Influencing witnesses (O.C.G.A. § 16-10-93)
- Obstructing justice (O.C.G.A. § 16-10-24)

307.    Defendants committed numerous acts of racketeering activity under Georgia law, including:

**Theft by Taking (O.C.G.A. § 16-8-2):**

308.    Defendants unlawfully took property (money) from criminal defendants with the intent to deprive the owners of the property.

309.    Specifically, Defendants induced defendants to pay money to Vines under false pretenses, representing that payment was necessary for legal representation when in fact payment was part of a bribery scheme.

310.    The money taken exceeded $500, making each offense a felony.

**Theft by Deception (O.C.G.A. § 16-8-3):**

311.    Defendants obtained property (money) from criminal defendants by deception and with the intent to deprive the owners of the property.

312.    The deception consisted of:

- Representing that Vines was being retained for legitimate legal services
- Concealing that the fees included bribes to public officials

- Representing that favorable treatment was based on legal merit rather than corruption

- Filing false dismissal documents claiming "insufficient evidence"

313. The money obtained exceeded $500, making each offense a felony.

**Bribery (O.C.G.A. § 16-10-2):** 363. Defendants Howard and Cochran, as public officers, corruptly requested, received, and agreed to receive benefits in exchange for being influenced in their official duties.

314. Defendant Vines gave and agreed to give benefits to public officers with the intent to influence them in their official duties.

315. Each instance of bribery constitutes a separate felony offense.

**Violation of Oath by Public Officer (O.C.G.A. § 16-10-1):**

316. Defendants Howard and Cochran, as public officers who had taken oaths to faithfully discharge their duties and uphold the Constitution and laws, willfully and intentionally violated their oaths.

317. Specifically, Howard violated his oath by:

- Using his office for personal financial, political, and/or social gain

- Dismissing meritorious charges for corrupt reasons

- Assisting criminal defendants in concealing DUI charges and arrests

- Assisting criminal defendant in avoiding administrative license suspensions required under Georgia's implied consent law (OCGA § 40-5-67.1)

- Representing criminal defendants while serving as prosecutor

- Failing to faithfully discharge his prosecutorial duties

318. Cochran violated his oath by:

- Using his office for personal financial, political, and/or social gain

- Referring arrestees to attorneys for financial benefit

- Assisting criminal defendants in concealing DUI charges and arrests

- Assisting criminal defendant in avoiding administrative license suspensions required under Georgia's implied consent law (OCGA § 40-5-67.1)

- Protecting certain defendants from prosecution

- Failing to faithfully discharge his law enforcement duties

319.    Each violation of oath by a public officer is a felony.

**Obstructing Justice (O.C.G.A. § 16-10-24):** 370. Defendants knowingly and willfully hindered, obstructed, or prevented law enforcement officers and prosecutors from carrying out their official duties.

320.    Specifically, Cochran obstructed justice by preventing proper investigation and prosecution of DUI cases.

321.    Howard obstructed justice by corruptly dismissing meritorious charges

322.    Vines obstructed justice by facilitating and coordinating the corrupt scheme.

323.    Each act of obstruction is a separate felony offense.

**Pattern of Racketeering Activity:**

324.    The acts described above constitute a "pattern of racketeering activity" under O.C.G.A. § 16-14-3(8), which requires:

- At least two acts of racketeering activity

- At least one of which occurred after July 1, 1980

- The last of which occurred within four years after a prior act of racketeering activity

325.    Defendants committed numerous acts of racketeering activity spanning from 2021 through at least 2024, well satisfying this definition.

326.    These acts were related in that they shared common purposes, participants, victims, and methods.

327.    These acts posed a threat of continued criminal activity, as evidenced by the ongoing nature of the scheme over several years.

**Individual Participation:**

328. Each Defendant conducted or participated in the conduct of the Enterprise's affairs through this pattern of racketeering activity in the manner described in Count V.

**Causation and Injury:**

328. Plaintiff was injured by reason of Defendants' violations of Georgia RICO.

329.   Plaintiff's injuries were proximately caused by the pattern of racketeering activity in the same manner as described in Counts V and VI.

330.   O.C.G.A. § 16-14-6 provides: "Any person who is injured by reason of any violation of Code Section 16-14-4 shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages. Such person shall also recover attorney's fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred."

## COUNT VIII
### Georgia RICO Conspiracy - O.C.G.A. § 16-14-4(d)
### (Against Defendants Howard, Cochran, and Vines in their Individual Capacities)

331.   Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

332.   O.C.G.A. § 16-14-4(d) provides: "It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a), (b), or (c) of this Code section."

333.   Beginning no later than 2021 and continuing through at least May 2024, Defendants Howard, Cochran, and Vines conspired to violate O.C.G.A. § 16-14-4(c) by agreeing to conduct the affairs of the Enterprise through a pattern of racketeering activity.

334.   The conspiracy had all of the elements described in Count VI (agreement, knowledge, overt acts).

335.   Plaintiff was injured by reason of this conspiracy in the same manner as described in Counts V, VI, and VII.

336.   Plaintiff is entitled to treble damages, punitive damages where appropriate, attorney's fees, and costs pursuant to O.C.G.A. § 16-14-6.

## COUNT IX
### Official Misconduct / Breach of Fiduciary Duty

**(Against Defendants Howard and Cochran in their Individual Capacities and Against Washington County)**

337.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

338.    Under Georgia law, public officers owe fiduciary duties to the citizens they serve.

339.    These duties include:

(a) Duty of loyalty to the public rather than private interests,

(b) Duty to exercise authority for public purposes rather than personal gain,

(c) Duty to act in good faith and in the best interests of the public,

(d) Duty to follow the law and Constitution,

(e) Duty to avoid conflicts of interest, and

(f) Duty to exercise reasonable care in performing official duties

340.    Defendants Howard and Cochran, as public officers, owed these fiduciary duties to Plaintiff and all other citizens of Washington County.

341.    Defendants Howard and Cochran breached these fiduciary duties by:

(a) Acting for personal financial gain rather than public interest

(b) Engaging in corrupt practices

(c) Creating and maintaining conflicts of interest

(d) Violating constitutional rights of citizens

(e) Failing to properly prosecute and supervise dangerous offenders

(f) Systematically favoring certain defendants over others

(g) Using their offices as instrumentalities of crime

342.    These breaches were willful, wanton, and in reckless disregard of the rights and safety of citizens.

343.    As public officials entrusted with law enforcement and prosecution, Defendants owed a heightened duty of care to protect public safety.

344.    Defendants breached this heightened duty by allowing dangerous offenders like Hodges to escape proper prosecution and remain free to harm others.

345.    Defendant Washington County is liable for these breaches of fiduciary duty under respondeat superior and *Monell* principles because:

(a) Howard and Cochran were acting in the scope of their employment

(b) Their conduct was carried out under color of official authority

(c) The breaches were pursuant to county policy, custom, or practice

(d) The county failed to adequately supervise and train its officials

346.    As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiff has suffered the damages described above.

## COUNT X
### Negligence and Gross Negligence
### (Against Defendants Howard and Cochran in their Individual Capacities and Against Washington County)

347.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

348.    Defendants Howard and Cochran, as law enforcement and prosecutorial officials, owed a duty of care to Plaintiff and other citizens of Washington County to:

•    Properly investigate and prosecute criminal offenses

•    Exercise reasonable prosecutorial discretion

•    Protect public safety

•    Prevent dangerous offenders from harming others

•    Follow constitutional and legal requirements in performing their duties

349.    Defendants Howard and Cochran breached these duties by:

•    Failing to properly prosecute Hodges for his DUI offenses

•    Improperly dismissing meritorious charges

•    Allowing Hodges to remain free without consequences or supervision

•    Creating a corrupt system that prioritized financial gain over public safety

•    Failing to exercise any reasonable care in their prosecutorial decisions

350.    Defendants' conduct constituted not only simple negligence but gross negligence in that it demonstrated:

- A complete absence of diligence

- Reckless disregard for the safety of others

- Conscious indifference to consequences

- Such a lack of care as would raise a presumption of conscious indifference

351.    The breach of duty by Defendants was a proximate cause of Plaintiff's injuries because:

- But for the improper dismissal of Hodges's charges, he would have been incarcerated or supervised under a probationary sentence,

- The attack on Plaintiff was a foreseeable consequence of releasing a repeat offender without consequences, and

- There was a direct and unbroken chain of causation from the dismissals to the attack.

352.    Defendant Washington County is liable for Defendants' negligence and gross negligence under respondeat superior and *Monell* principles because:

- Howard and Cochran were acting in the scope of their employment,

- The county's policies, customs, and practices caused or contributed to the negligence,

- The county failed to adequately train and supervise its officials, and

- The county was deliberately indifferent to obvious risks.

353.    As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiff has suffered the damages described above.

## COUNT XI
## Civil Conspiracy
## (Against All Defendants)

354.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

355.    Beginning no later than 2021 and continuing through at least May 2024, Defendants Howard, Cochran, Raley, and Vines conspired and agreed among themselves to commit unlawful acts and to commit lawful acts by unlawful means.

356.    The objects of the conspiracy included:

(a) Depriving citizens of constitutional rights

(b) Committing fraud

(c) Committing theft

(d) Obstructing justice

(e) Violating oaths of office

(f) Operating a corrupt enterprise

(g) Enriching themselves at public expense

357.    In furtherance of this conspiracy, Defendants committed numerous overt acts, including all of the acts described in the preceding allegations.

358.    The conspiracy was formed and acts were committed in furtherance thereof in Washington County, Georgia.

359.    As a direct and proximate result of this conspiracy and the acts committed in furtherance thereof, Plaintiff suffered the damages described above.

360.    Defendant Washington County is liable for this conspiracy under *Monell* principles because the conspiracy was carried out by final policymakers using county resources and authority.

## COUNT XII
### Battery
### (Against Defendants Richard Hodges, Ryan Christopher Hodges, and Jason Prince)

361.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

362.    On May 26, 2024, Defendants Richard Hodges, Ryan Hodges and Jason Prince intentionally and without justification struck Plaintiff Stanley Barfield about the head and body.

363.    Defendant Ryan Christopher Hodges had consumed alcohol prior to the attack upon Plaintiff.

364.    Defendant Ryan Christopher Hodges was under the influence of alcohol prior to attacking Plaintiff.

365.    These strikes constituted harmful and offensive physical contact without Plaintiff's consent.

366.    Defendants acted with the intent to cause harmful or offensive contact, or acted with substantial certainty that such contact would result.

367.    The contact was harmful in that it caused physical injury to Plaintiff.

368.    Defendants had no legal justification or excuse for their conduct.

369.    As a direct and proximate result of Defendants' battery, Plaintiff suffered the physical injuries, pain and suffering, medical expenses, lost wages, and other damages described above.

### COUNT XIII
### Assault
### (Against Defendants Ricard Hodges, Ryan Christopher Hodges, and Jason Prince)

370.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

371.    On May 26, 2024, prior to and during the battery described in Count XIII, Defendants Richard Hodges, Ryan Hodges and Jason Prince placed Plaintiff Stanley Barfield in reasonable apprehension of imminent harmful or offensive contact.

372.    Defendant Ryan Christopher Hodges had consumed alcohol prior to the attack upon Plaintiff.

373.    Defendant Ryan Christopher Hodges was under the influence of alcohol prior to attacking Plaintiff.

374.    Defendants' threatening actions and approach created a reasonable fear in Plaintiff that he was about to be struck.

375.    Defendants acted with the intent to place Plaintiff in apprehension of imminent harmful contact, or acted with substantial certainty that such apprehension would result.

376.    Plaintiff's apprehension was reasonable under the circumstances.

377.    As a direct and proximate result of Defendants' assault, Plaintiff suffered emotional distress, fear, and other damages.

## COUNT XIV
### Intentional Infliction of Emotional Distress
### (Against All Individual Defendants)

378.    Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

379.    All individual Defendants engaged in extreme and outrageous conduct that exceeded all bounds of decency tolerated by society.

380.    Specifically:

- Defendants Howard, Cochran, and Vines operated a corrupt scheme that endangered public safety and corrupted the justice system

- These Defendants acted with reckless disregard for the obvious risk that dangerous offenders would be released to harm innocent citizens

- Defendants Hodges and Prince brutally attacked Plaintiff without provocation

381.    This conduct was extreme and outrageous in that:

(a) Public officials sworn to protect citizens instead enriched themselves and endangered the public

(b) The corruption was systematic and long-standing

(c) The attack on Plaintiff was brutal and unprovoked

(d) The conduct showed complete disregard for human dignity and safety

382.    Defendants either intended to cause Plaintiff emotional distress or acted with reckless disregard as to whether emotional distress would result.

383. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including:

(a) Fear and anxiety

(b) Trauma from the attack

(c) Anger and frustration over the corruption that enabled his injury

(d) Ongoing psychological harm

384. This emotional distress is severe and of a nature that no reasonable person could be expected to endure it.

## COUNT XV
### Negligent Infliction of Emotional Distress
### (Against Defendants Howard, Cochran, and Washington County)

385. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

386. In the alternative to Count XIV, if Defendants' conduct is found not to have been intentional, it was at minimum negligent.

387. Defendants owed Plaintiff a duty to exercise reasonable care to avoid inflicting emotional distress through their official actions.

388. Defendants breached this duty through the conduct described above.

389. Plaintiff was within the zone of danger created by Defendants' conduct and was a foreseeable victim.

390. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered the emotional distress described in Count XVI.

## COUNT XVI
### Punitive Damages
### (Against All Individual Defendants)

391. Plaintiff repeats and incorporates by reference all preceding allegations as if fully set forth herein.

392. The conduct of all individual Defendants as described above was willful, wanton, malicious, and in reckless disregard of Plaintiff's rights and safety.

393.    Defendants Howard, Cochran, Raley, and Vines:

(a) Acted with full knowledge that their corrupt scheme endangered public safety,

(b) Acted with conscious indifference to the safety of the community, and

(c) Continued the scheme over years despite obvious risks.

394.    Defendants Richard Hodges, Ryan Christopher and Prince:

(a) Attacked Plaintiff without provocation

(b) Acted with malice and intent to harm

(c) Showed complete disregard for Plaintiff's safety and rights

395.    This conduct justifies the imposition of punitive damages to:

(a) Punish Defendants for their egregious conduct

(b) Deter Defendants and others from similar conduct in the future

(c) Express society's condemnation of such conduct

396.    Plaintiff is entitled to punitive damages against all individual Defendants in an amount to be determined by the jury but sufficient to accomplish the purposes stated above.

**WHEREFORE**, Plaintiff Stanley Barfield respectfully requests that this Honorable Court:

a)    Issue process and cause the same to be served upon Defendants,

b)    Grants the Plaintiff a trial before a jury as to all issues and claims that may decided by a jury;

c)    Award Plaintiff compensatory damages against all Defendants, jointly and severally, in an amount to be proven at trial but not less than $1,500,000.00, for:

- Past and future physical pain and suffering

- Past and future mental and emotional pain and suffering

- Past and future medical expenses

- Loss of enjoyment of life

- Permanent disability and disfigurement

- Violation of constitutional rights

- All other elements of compensatory damages to which Plaintiff is entitled;

d) Award Plaintiff three times (treble) his actual damages against Defendants Howard, Cochran, and Vines pursuant to 18 U.S.C. § 1964(c) for violations of federal RICO;

e) Award Plaintiff three times (treble) his actual damages against Defendants Howard, Cochran, and Vines pursuant to O.C.G.A. § 16-14-6 for violations of Georgia RICO;

f) Award Plaintiff punitive damages against all individual Defendants in an amount to be determined by the jury but sufficient to:

- Punish Defendants for their willful, wanton, malicious, and oppressive conduct
- Deter Defendants and others from similar conduct in the future
- Express society's condemnation of corruption in the justice system
- Vindicate Plaintiff's constitutional and legal rights;

g) Award Plaintiff his reasonable attorney's fees and costs incurred in this action pursuant to:

- 42 U.S.C. § 1988 (for civil rights claims)
- 18 U.S.C. § 1964(c) (for federal RICO claims)
- O.C.G.A. § 16-14-6 (for Georgia RICO claims)
- All other applicable provisions of law;

h) Award Plaintiff pre-judgment interest on all damages from the date of accrual to the date of judgment;

i) Award Plaintiff post-judgment interest on all damages from the date of judgment until paid in full;

j) Award Plaintiff the costs of this action, including expert witness fees and investigation costs; and

k) Grant Plaintiff such other and further relief as this Court deems just, proper, and equitable.

RESPECTFULLY SUBMITTED, this 4th day of November, 2025.

/s/D. Benjamin Sessions
Georgia Bar No. 141280
Attorney for Stanley Barfield

SESSIONS & FLEISCHMAN, LLC
3155 Roswell Rd., Ste. 220
Atlanta, GA 30305
(470) 225-7710
ben@thesessionslawfirm.com